Gerald J. Smit
14 Sarah Court
Bridgewater, NJ 08807
908-443-1476
Pro Se

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (TRENTON)

_____
|  :
|  :
Gerald Smit,                              :
individually and on behalf of all         :
others similarly situated                 :         CIVIL ACTION
                                          :
          Plaintiffs,                     :         Class Action
                                          :
          v.                              :         COMPLAINT
                                          :
Township of Toms River NJ,                :         and demand
Ocean County NJ, and                      :
                                          :         for
John Doe(s) to be later identified        :
                                          :         JURY TRIAL
          Defendants.                     :
                                          :
_____

Plaintiffs, complaining of the Defendants, aver:


ADDRESSES OF NAMED PARTIES


1.The Plaintiffs address is:

Gerald Smit
14 Sarah Court
Bridgewater, NJ 08807

2.The Defendants' addresses are:

Department of Law
Township of Toms River NJ
P.O. Box 728
Toms River, NJ 08754

Chelsea Skuby, Tax Administrator
Ocean County NJ Tax Board
118 Washington Street, Court House
Toms River, N.J. 08754

John Doe(s) to be later identified pending discovery and are of a number not to exceed the count of Toms River, Ocean County, and State of New Jersey employees, agents and contacted entities.

JURISDICTION AND VENUE

Plaintiffs invoke the jurisdiction of this Court pursuant to the Racketeer Influenced and

Corrupt Organizations Act (RICO).   Jurisdiction is also proper for Constitution issues.

Venue is proper in this Court in that the Defendants reside or may be found in this District.

JURY TRIAL

Plaintiffs demand a trial by jury under the United States Constitution, Fed.R.Civ.P. 38(a) and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. §§ 1961 et seq.

THE PARTIES

Plaintiffs are property owners on the barrier island of Toms River NJ. The members of the proposed class reside throughout the United States and in foreign countries and on information and belief number in the thousands.

On information and belief, Defendants Township of Toms River NJ, and Ocean County NJ are governmental entities of the State of New Jersey.

Defendant John Doe(s) are individual perpetrators to be later identified pending discovery and are of a number not to exceed the count of Toms River, Ocean County, and State of New Jersey employees, agents and contacted entities.

Hereinafter Defendants will be collectively referred to hereinafter by the term "Pineys". Piney is a historical, cultural demonym for the inhabitants of the New Jersey Pine Barrens, which includes much of Ocean County.  According to Wikipedia, Pineys are known for their extreme self-interest and "often fostered stories of how violent they were in order to

33

discourage outsiders and law enforcement from entering the Barrens.   Today, Pineys

tend to wear the label as a badge of honor",  [Birdsall, Bob. People of the Pines (2007).

Plexus Publishing, Inc., Medford, New Jersey]


CLASS ACTION ALLEGATIONS

Plaintiffs bring this action as a class action in accordance with Federal Rule of Civil

Procedure 23 to resolve disputes under the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C.S. §§ 1961 et seq.. Judicial economy dictates

resolving all issues as a single action in accordance with Federal Rule of Civil Procedure

23(b).

Plaintiffs bring this action as a class action on behalf of similarly situated property owners

on the barrier island of Toms River NJ. The proposed class is defined as any and all

persons who: have been adversely impacted by fraudulent real property tax valuations.

On information and belief, the proposed class numbers in the thousands and is so

numerous that joinder of all members is impracticable.

There are common questions of law and fact affecting the rights of Plaintiffs. The claims of

the named class representative are typical of the claims of the class. The named class

representative will fairly and adequately protect the interests of the class. This action is

34

best maintainable as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class. In addition, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication that would establish incompatible standards of conduct for Defendant.

All the following statements are presented and made on information and belief.

## STATEMENT OF FACTS

Plaintiff's property, at 221 Mallard Lane in Toms River, will hereinafter be referred to as "Mallard".

The results of a Toms River real property tax revaluation have just been announced and they are unjustified.

**Legal Definition Of Racketeering**

The Racketeer Influenced and Corrupt Organizations Act, commonly referred to as the RICO Act or simply RICO, is a United States federal law that provides for extended criminal penalties and a civil cause of action for acts performed as part of an ongoing

criminal organization.  The RICO Act focuses specifically on racketeering and allows the leaders of a syndicate to be tried for the crimes they ordered others to do or assisted them in doing, closing a perceived loophole that allowed a person who instructed someone else to, for example, murder, to be exempt from the trial because they did not actually commit the crime personally.

RICO was enacted by section 901(a) of the Organized Crime Control Act of 1970 (Pub.L. 91–452, 84 Stat. 922, enacted October 15, 1970) and is codified at 18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968. G. Robert Blakey, an adviser to the United States Senate Government Operations Committee, drafted the law under the close supervision of the committee's chairman, Senator John Little McClellan. It was enacted as Title IX of the Organized Crime Control Act of 1970, and signed into law by Richard M. Nixon. While its original use in the 1970s was to prosecute the Mafia as well as others who were actively engaged in organized crime, its later application has been more widespread.

In order to establish a RICO violation, it must be proven 1) the existence of an enterprise, 2) the defendant's derivation of income from a pattern of racketeering activity, and 3) the use of any part of that income in acquiring an interest in or operating the enterprise. United States v. Cauble, 706 F.2d 1322, 1331 (5th Cir. 1983).In addition, there must be a nexus between the claimed violation and the plaintiff's injury, which must flow from the use or investment of racketeering income. Crowe v. Henry, 43 F.3d 198, 205 (5th Cir. 1995), St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 441 (5th Cir. La. 2000).

The term "enterprise," as defined in the Act, includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. RICO applies to both illegitimate and legitimate enterprises. United States v. Thevis, 665 F.2d 616 (5th Cir. Ga. 1982).

The term "racketeering activity" has been defined broadly under the Act in order to embrace any act indictable under a host of federal statutes, in both civil and criminal cases. Courts have held that the RICO Act's applicability is not limited to members of organized crime and hence no connection with organized crime need be shown. The RICO Act provides for criminal penalties of imprisonment, fines, and forfeiture for violation of its provisions. 18 U.S.C.S. § 1963.

A RICO violation requires proof of a "pattern of racketeering activity," through "at least two acts of racketeering activity, the last of which occurred within ten years." 18 U.S.C. § 1961(5), Blue Cross & Blue Shield of N.J. Inc. v. Philip Morris, Inc., 36 F. Supp. 2d 560, 567 (E.D.N.Y. 1999). Courts generally construe RICO liberally in order to effectuate its remedial purposes. In order to establish a pattern, the plaintiff should prove a relationship between the acts of racketeering activity charged and a threat of continuing activity, or continuity of such activity. In other words, "continuity plus relationship" produces a pattern of racketeering activity. H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (U.S. 1989). The term "pattern" thus requires at least two acts of racketeering activity within a 10-year period. 18 U.S.C.S. § 1961(5).

An alternative to showing a pattern of racketeering activity is to show the collection of an unlawful debt. While there should be at least two wrongful acts to establish a pattern,

only one collection is necessary to establish a violation. 18 U.S.C.A. § 1961(6). The

collection of an unlawful debt can be shown either by showing gambling activity violating

federal, state, or local law, or a debt incurred in connection with that

gambling activity and collection of the debt. This method of proving the collection of an

unlawful debt applies even in a state that has no specific statutory proscription of the

business of gambling.

Beginning in 1972, 33 states, including New Jersey, adopted state RICO laws to be able

to prosecute similar conduct.   "The language of the New Jersey counterpart of [the

federal Racketeer Influenced and Corrupt Organizations Act ("RICO")], 18 U.S.C. § 1962,

N.J.S.A. 2C:41-2, is identical in all material respects except that the New Jersey Act is

directed toward enterprises engaged in or the activities of which affect 'trade or

commerce,' not interstate or foreign commerce." Kievit v. Rokeach, No. 86-2592, 1987

U.S. Dist. LEXIS 16131, at *20-*21 (D.N.J. Oct. 29, 1987) [enhanced version];accord

New Jersey Office Supply, Inc. v. Feldman, No. 89-3990, 1990 U.S. Dist. LEXIS 6620, at

*9 (D.N.J. June 4, 1990)

To prove a cause of action under section 2C:41-2(c) of the New Jersey Racketeer

Influenced and Corrupt Organizations Act ("New Jersey RICO"), N.J.S.A. § 2C:41-2(c),

the plaintiff must demonstrate (1) the existence of an enterprise, (2) that the enterprise

engaged in or its activities affected trade or commerce, (3) that defendant was employed

by, or associated with the enterprise, (4) that he participated in the conduct of the affairs

of the enterprise, and (5) that he participated through a  pattern of racketeering activity.

State v. Ball, 141 N.J. 142, 181-187, 661 A.2d 251, 270-274 (N.J. 1995) [an enhanced

38

version of this opinion is available to lexis.com subscribers]. New Jersey RICO defines "racketeering activity" as including, among other things, bribery, extortion, forgery and fraudulent practices, securities fraud, and all crimes set forth in chapter 21 of Title 2C of the New Jersey Statutes. See N.J.S.A. § 2C:41-1(a).

## Criminal Coercion

Under N.J.S.A. 2C:13-5, New Jersey recognizes criminal coercion. A person can be charged with criminal coercion if he purposefully and unlawfully restricts the freedom of another to engage in or refrain from engaging in conduct by threatening to: …4. Take or withhold action as an official. As officers of government, The Pineys are engaging in and benefiting from unjust tax valuations.

Coercion harm has been characterized by the United States Supreme Court as the "interference" of civil liberties and rights of another that occur when they are forced – through the use of threats or intimidation – to commit an act or not commit an act which they have "a legal right to do or to abstain from doing." *Sekhar v. U.S.*, 133 S.Ct. 2720, 2725 (2013).  The payment of unjust taxes is such an act.

## Criminal Extortion

Extortion by an official is a crime under the NEW JERSEY CODE OF CRIMINAL JUSTICE NJ Rev Stat § 2C:13-5(4) (2013). Under 18 U.S. Code § 875.Interstate

communications (d) Whoever, with intent to extort from any person …  any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another ….is guilty of extortion.

All extortion statutes require that a threat must be made to the person or property of the victim. Plaintiff's intention to take money from Defendant by using unjust property tax valuations is extortion..

**The Enterprise**

The long-term association that exists for criminal purposes is the enterprise.  The enterprise consists of the Pineys acting in concert to reduce the real property tax burden on their base by increasing the tax burden on the Barrier Island taxpayers.

The enterprise is an ongoing organization, both formal and informal in its interrelationships in which its various associates function as a continuing unit and that it exists separate and apart from pattern of activity in which it engages and the legitimate activities in which it could engage.  The predicate acts prove both existence of the enterprise and a connected pattern of racketeering activity includes group of persons

associated together for common purpose of engaging in course of conduct which is proved by evidence of ongoing organization, formal or informal, and by evidence that various associates function as continuing unit.

**The object of the RICO criminal enterprise**

The object of the RICO criminal enterprise has been to transfer the real property tax burden from base Mainland residents to Barrier Island property owners.  The stealing had two related components (1)  not collecting relevant value determinative facts and (2) using false statistical assumptions in valuations to transfer the tax burden.

**On-going Threat of Continuing Criminal Activity**

The injustices described in the Predicate Acts will continue if not addressed and remedied.

**RICO Scienter**

The treatment of Barrier Island property owners as set forth in this document is the evidence of RICO scienter.  The alleged predicate acts of racketeering activity were knowingly and willfully committed by the Pineys.

**Interstate Commerce**

The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.  Casual observation of vehicle license plates parked on the barrier Island reveals that approximately 40% of the people are from out of state to New Jersey.

Plaintiff invites his 7 and 9 year old granddaughters to visit at the Jersey shore.  They visit and their parents spend money as they vacation.  Plaintiff will unable to entice them to vist if Plain cannot afford to pay the property taxes.  Tourism to the Jersey shore is one of the major NJ businesses.  But the family atmosphere of the Jersey shore cannot be sustained if only property speculators are the propert owners.

Predicate Acts

Predicate Act 1 - Past coercion of fraudulent payments.

The Pineys assert Mallard structure had been substantially damaged during Hurricane Sandy and as such it must be demolished. Including the asbestos siding removal, the cost of the Mallard structure demolition is estimated to be approximately $10,000. The market value of Mallard is therefore negative $10,000.

The Pineys exert Authority Under FEMA to demolish substantially damaged properties. The Pineys cite other property instances where they have already exercised this demolition power. The Pineys threaten to demolish Mallard structure at plaintiff's cost if plaintiff does not do so.

Although the market value of Mallard structure is negative $10,000, The Pineys concocted (as will be described below) a market value of $39,200.  Plaintiff Is coerced to

43

pay taxes on this fraudulent value to prevent Pineys from foreclosing on the property for

lack of tax payment and selling Mallard in a tax sale.

Plaintiff complained to the tax assessor about this market value conundrum and also

complained by certified mail, sending individual letters to each of the county tax board

members.  The Pineys took no action on these complaints.

Predicate Act 2 - coercion of increased fraudulent payments.

In a letter dated 3/4/2022, the Pineys now assert the Mallard structure has increased in

market value from $39,200 to $210,600.  Plaintiff Is coerced to pay taxes on this

fraudulent value to prevent Pineys from foreclosing on the property for lack of tax

payment and selling Mallard in a tax sale.

The Pineys attempted to justify this increase using three nearby recent property sales.

However, the three sales were not at all comparable as they were of larger, recently

demolished and raised structures.  That these structures were raised is all

determinative.  Raised structures are not comparable as Mallard periodically floods, but

raised structures are immune to the impacts of flooding. Due to global warming, the

44

Mallard interior has begun to experience common storm flooding. Mallard's interior was flooded this past autumn. Although Mallard was not flooded last year, it flooded twice the year previous. Mallard floods when the Barnegat Bay water level, as measured at the Mantoloking Bridge, exceeds a height of approximately 3.8 ft. The Pineys are well aware of this flooding as the several hundred feet nearby State Highway 35 floods and must be closed to all traffic when the Barnegat Bay height exceeds approximately 3 ft.

The Pineys were informed of this flooding issue and the lack of comparability to the three recent sales when the $210,000 Mallard structure valuation was first proposed. In furtherance of the racketeering Enterprise, the Pineys chose not to act on this information.

Predicate Act 3 - coercion by refusal to grant remediation construction permits.

The Pineys refused to Grant plaintiff a building permit to replace the roof on the Mallard structure to prevent property waste. The refusal was intended to coerce plaintiff into demolishing and rebuilding the Mallard structure.

Predicate Act 4 - Fraud in using pre-Sandy property sales prices for post-Sandy valuations.

During the six-month period immediately after Hurricane Sandy, the Barrier Island was inaccessible to the general public. This lack of access resulted in few barrier island sales during this time period. The Pineys circumvented this lack of data for tax valuation purposes by using the pre-Sandy contracted sales prices of Barrier Island properties that closed post-Sandy.  In discussing my post-sandy tax valuation with Piney, Piney disclosed use of comparable properties having raised structures suffering minimal Sandy damage thereby requiring such property sales to close using the pre-sandy contracted price on the post-Sandy closing date.

Such inappropriate sales fit precisely into the Pineys post-Sandy townwide valuation. Piney tax assessor responded to this discussion only by referring the matter to the town attorney who took no action.

Predicate Act 5 - Fraud in failing to collect and consider appropriate facts.

Over the past half-century plaintiff has observed that piney's greatly overvalue the land and substantially over-value the structures in plaintiff's neighborhood. This may be

46

attributable to Pineys failing to consider important facts.  For example, plaintiff's immediate neighbor (217 Mallard Lane)  identical dimensioned lot sold recently for $225,000. In contrast the Mallard land value land valuation is $282,400.

The Pineys do not collect and consider relevant and material facts necessary to make accurate and reliable Barrier Island property valuations.  Such factors include: structure setback from lagoon, lagoon width, street width, the availability of on-street parking, and sidewalks.  Another factor is the presence of property deed restrictions, typically referred to as Club restrictions.  This is important for four Barrier Island properties. Such club restrictions as prohibition on second-story structure constructions, deck sizes and heights, and on-lot parking spaces substantially impact property value but are not recognized by the Pineys.  The Pineys do not consider whether street flooding can trap homeowners.  None of these factors are important for Mainland properties but are critical for valuation of Barrier Island properties. The Pineys do not recognize these factors because they decrease the value of Barrier Island properties implying increased taxes for Mainland piney constituents.  An example of the issue is bulkheads. Bulkheads are property structures separating land from water and are expensive, many costing in the range of $100,000. Mainland properties with larger lot dimensions typically require larger, and more expensive bulkheads. The Pineys do not recognize the value of bulkheads in their valuation calculations because Barrier Island properties have smaller bulkheads implying increased taxes on the larger bulkhead values for Mainland piney constituents. On discussing the bulkhead valuation issue with the contractor agent piney had hired to

47

do the recent property valuation, Piney's contractor agent replied "what is a bulkhead?"
Pineys do not consider a structure periodically flooding to be important in property
valuation because it is not a Mainland issue.

Toms River did not consider the follow factors which are critical for the valuation of the
parcels in the Ocean Beach Unit II area:

1.) Extremely narrow lagoon width not present in other Town areas.
2.) Low height of living space above water level
3.) Property use restrictions defined by the beach and riparian right owner
4.) Complete absence of sidewalk space
5.) Narrow street width
6.) Substandard 2x3 verses 2x4 construction
7.) No setbacks of structures on surrounding parcels
8.) Scum/debris/seaweed collection in short lagoons
9.) Lack of structure setback on across lagoon parcels
10.) Lack of adherence to setback ordinances on nearby/adjacent parcel
11.) Presence of building deed restrictions
12.) Absence of riparian rights
13.) Prohibition of on-street parking
14.) Canyon effect caused by small distance between opposing face walls of the
     structures on the opposite sides of the street
15.) Lack of sunlight due to the canyon effect caused by the small distance between
     opposing face walls of the structures on the opposite sides of the street

The before-named factors do not constitute an exhaustive list.

Predicate Act 6 – Theft based on statistical valuations.

Benjamin Disraeli once noted that there are three kinds of lies: lies, damned lies, and statistics. The Pineys are using invalid statistical techniques to justify their valuations.  This is theft based on statistical masquerade.  Chadwick and Ocean Beach Unit III waterfront Parcels have 25% higher sales prices In comparison to those in Ocean Beach Unit 2 yet their property taxes are the same.  The Pineys are doing something intrinsically inappropriate and misleading with their statistical calculations to obtain their valuations.  Examples of how the Pineys are misapplying statistics can be found in such texts as "How To Lie With Statistics" and Statistics Concepts and Controversies.

The Pineys are using inappropriate statistical approximations and inferences to disaggregate land values from structure values. Exceedingly few, if any, real property sales contracts ever differentiate between land values and structure values and to determine such numbers, statistics must be used..

Predicate Act 7 - Theft of value to enrich local contractors.

Immediately after Hurricane Sandy, The Pineys prevented Barrier Island homeowners from accessing their properties to remediate flood damage, including Mallard, for months after the hurricane occurred.  The months' delay in cleaning the flood waters caused more damage than the actual flooding itself.  There was no reason for the delay other than that the local contractors should benefit from Sandy reconstruction work.

49

FIRST CLAIM FOR RELIEF –RICO VIOLATION

Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Plaintiffs allege that defendants committed acts in violation of 18 U.S.C. §§ 1962(a), (b), and (c) and further allege that defendants conspired to commit racketeering acts in violation of 18 U.S.C. § 1962(d). Plaintiffs also bring state law claims pursuant to the Court's pendent jurisdiction, alleging acts also in violation of the New Jersey Rico statute N.J. Stat. § 2C:41-1 , et. Seq.

The Pineys enterprise engaged in the pattern of unlawful activities defined in the list of predicate acts for the purpose of achieving the objectives of the enterprise through a pattern of racketeering activity.  By participating in these racketeering activities, the individual defendants violated 18 U.S.C. § 1962(c), which prohibits conducting or participating in the affairs of an enterprise through racketeering activity.  Defendants have violated 18 U.S.C. § 1962(a) by using the proceeds of a pattern of racketeering activity in the operation of an enterprise engaged in and affecting interstate and foreign commerce.

As portrayed in the predicate acts, The Pineys 'activities demonstrate both a past period of repeated conduct and in addition, conduct that by its nature projects into the future. Defendant The Pineys activities as portrayed in this pleading have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events  Plaintiffs have been injured from forcing the payment of inappropriate taxes.  The actions set forth in the predicate acts employ different techniques but are related in their objective to commit thievery on Barrier Island real property owners.  The Pineys have engaged in a pattern of racketeering conduct that poses the threat of continued criminal activity.

All of the predicate acts have occurred within ten years of the present with the most recent occurring at present and anticipated to continue occurring in the future.  Open-ended continuity is satisfied in that the predicates are a regular way of conducting defendant's ongoing business.

SECOND CLAIM FOR RELIEF – UNLAWFUL FIFTH AMENDMENT TAKING

The Pineys are unjustly taking value from plaintiffs without compensation as required by the Fifth Amendment to the United States Constitution.

THIRD CLAIM FOR RELIEF – THEFT USING STATISTICAL JUSTIFICATION

51

For a 1990s property tax revaluation, I went through the tax board hearing process and subsequently brought action in the tax court.  In the discussions with the then Tax Assessor while reviewing comparables preliminary to the trial, it was revealed that the determinates of market value that greatly impact the market value of the lagoon homes in the Town's Ocean Beach Unit II section were not being carried on the property records and were not being considered in the Town's valuation process.  Recognizing this error, the assessor reduced the property values en blanc for the entire Ocean Beach Unit II area.  This problem continues to the present day.

The lagoon parcels in the Ocean Beach Unit II area are likely the smallest in the state and range in size from 40 x 40 feet.  The surrounding roadways and lagoons are similarly diminutive in size.  There is a complete absence due to lack of space for sidewalks and curbing.

I have discussed my concerns regarding the market determinates for these small waterfront parcels with the Toms River appraisal company that performed the recent property inspections.  The appraisal company has been guarded about the precise factors it maintains and used in performing its valuations.  However, my questioning revealed it unlikely that the appraisal company considered the appropriate factors.

It appears that the market values of the Ocean Beach Unit II area parcels have been set by Toms River's appraisal company by using least squares regression analysis.  As the small Ocean Beach Unit II area parcels are at the tail of the regression curve, there is low statistical validity and low reliability for the automated point estimate valuations.  The bottom end experiences sever confidence expansion problems in least squares techniques.  Using real comparable sales values, it can be readily observed that the assessed values are completely out of line with the market values.

It is my contention that the current Tax Assessor and the appraisal firm Toms River hired to perform the valuation data collection activities lack the ability to reasonably value parcels in the Ocean Beach Unit II area.  While the Tax Assessor and the appraisal firm may have the ability to estimate valuations in Newark or Paterson, they have no ability for beach area lagoon fronted parcels.

FORTH CLAIM FOR RELIEF – 14th AMENTMENT DUE PROCESS VIOLATION

The Pineys are abrogating defendants due process rights by gaming the property tax system to unlawfully obtain greater revenues from Barrier Island property owners than from Mainland property owners.

FIFTH CLAIM FOR RELIEF – FEMA SUBSTANTIALLY DAMAGED DETERMINATIONS

The manner in which properties are determined be FEMA substantially damaged is unjust. Moreover, the justification for determining that substantially damaged properties constitute a hazard is unreasonable.

WHEREFORE, the Plaintiff prays the Court that:

A. An Order issue preventing the recent Toms River property tax revaluation from taking effect until the appropriate data and statistical analyses issues are resolved.

B. Defendant pay the Plaintiff three-fold money damages, interest, fees, attorney's costs.

C. Defendant pay the Plaintiff punitive damages, interest, fees, attorney's costs.

D. For such other equitable relief as the court may deem appropriate.

Respectfully Submitted.

Respectfully submitted,
Gerald J. Smit
Pro Se

54

Dated: May 2, 2022

/s/ Gerald J. Smit

By:    Gerald J. Smit